**Elvin Lee BYNUM, Petitioner,**

v.

**UNITED STATES of America,
Respondent.**

**No. 76 Civ. 4761(MP).**

United States District Court,
S. D. New York.

Dec. 1, 1976.

Elvin Lee Bynum, pro se.

Robert B. Fiske, Jr., U. S. Atty., S. D. N. Y. by W. Cullen MacDonald, Asst. U. S. Atty., New York City.

POLLACK, District Judge.

Four and a half years after being convicted by a jury of narcotics conspiracy and substantive offenses and sentenced as a second narcotics offender to a thirty (30) year term of imprisonment and a $20,000 committed fine, Elvin Lee Bynum has filed a *pro se* petition pursuant to § 2255 of Title 28 U.S.C. to vacate and set aside his sentence.

Bynum assigns the contention to be found in a spate of current petitions emanating from detention facilities of having been deprived at trial of the effective assistance of counsel; here because of alleged conflict of interest between his counsel and a government witness. He also asserts that he was promised immunity from prosecution for narcotics conspiracy charges under investigation by government agents and was deceived thereby into cooperating in another connection.

Until this petition was filed in *pro se* style, Bynum had always been represented by his own chosen private counsel. There is no question raised hereon of his financial ability to be represented by a private counsel. Bynum's wealth disclosed on the trial was very large.

On appellate review of Bynum's conviction questions were raised concerning use of wiretap evidence at trial, and before proceeding further the Court of Appeals remanded those questions for a hearing (*United States v. Bynum*, 475 F.2d 832 (2d Cir. 1973)). An evidentiary hearing was held and a report was submitted to the Second Circuit (*United States v. Bynum*, 360 F.Supp. 400 (S.D.N.Y.1973)) which then proceeded with a plenary review of all issues raised by Bynum's appeal from his conviction, including the identical circumstances and issues now put forth in the principal point on this § 2255 petition. That point has been repeatedly and unsuccessfully litigated in the past by Bynum at various points in this case. This issue and all others raised by appeal were found wanting in merit and Bynum's conviction was upheld (*United States v. Bynum*, 485 F.2d 490 (2d Cir. 1973)). Shortly thereafter the Supreme Court decision in *United States v. Giordano*, 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974) suggested questions not resolved in *Bynum* and the Supreme Court vacated and remanded *Bynum* for reconsideration in light of its ruling in *Giordano* (*Bynum v. United States*, 417 U.S. 903, 94 S.Ct. 2598, 41 L.Ed.2d 209 (1974)). This Court in turn received the case back and conducted hear-

ings and found and reported that *Giordano* did not adversely affect Bynum's conviction (*United States v. Bynum*, 386 F.Supp. 449 (S.D.N.Y.1974)). The Court of Appeals affirmed this ruling (*United States v. Bynum*, 513 F.2d 533 (2d Cir. 1975)) and review in the Supreme Court was then denied (*United States v. Bynum*, 423 U.S. 952, 96 S.Ct. 357, 46 L.Ed.2d 277 (1975)).

The contention of Bynum that he was denied a fair and impartial trial in accordance with due process of law lacks factual and legal merit and his petition pursuant to § 2255 must be denied.

## I.

The petitioner's papers, relying on conclusory self-serving hearsay and devoid of fact on the material aspects asserts that his chief defense counsel, Evseroff, and a key witness against him, Stewart, interfered with Bynum's "constitutional right to the 'untrammeled and unimpaired assistance of counsel for his defense'" (petition 8) citing *Glasser v. United States*, 315 U.S. 60, 71, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

This identical matter was considered prior to sentence on Bynum's motion in arrest of judgment and for a new trial made on June 14, 1972 and heard on that day and again on June 27, 1972 and found devoid of factual basis impairing Evseroff's representation. Evseroff had in 1969 represented Stewart in connection with a charge of third degree assault which occurred in a restaurant and pertained to a girl. The proceeding resulted in Stewart's acquittal of the assault charge. When Stewart appeared as a witness for the government in Bynum's trial Bynum, his co-counsel Richard R. Ryder of Richmond, Virginia, the prosecutor, and the Court were advised of the earlier representation and Bynum had no objection thereto or to having his lawyer Evseroff proceed for him nonetheless in the case. Bynum, as stated above, raised the point after the trial through another lawyer retained at the time and the complaint was found to be contrived and unworthy of belief and was rejected, this Court finding as follows:

The evidence on which the defendants Bynum and Cordovano base this motion for a new trial and other relief is neither newly discovered since the trial nor sufficient to warrant a new trial.

The defendant Bynum contends that he was denied effective assistance of counsel because his presently retained counsel, Mr. Evseroff, had previously defended George Stewart, the Government's main witness, and informant, in a state court case in which Stewart was charged with criminal assault in the third degree, a misdemeanor.

It is undisputed that this prior state court prosecution ended in acquittal, that it concerned a past and wholly separated case of dissimilar nature and arose in a context utterly removed from narcotics conspiracy.

The record in the present case does not even remotely suggest that confidences of the witness Stewart were or could have been violated by Mr. Evseroff's representation of Bynum or that Evseroff's duties to Bynum could in any material or significant way come into collision with any obligation due his former client.

Bynum's trial counsel unequivocally states that at the beginning of the trial he informed Bynum of the prior representation of the witness, that this information was imparted as soon as counsel learned that this witness would appear.

This notification was unequivocally acknowledged by Mr. Bynum in a signed affidavit submitted June 14, 1972. He said in that affidavit that, "He," meaning himself, "learned at the commencement of the trial herein that said attorney had previously represented the Government witness in this case."

As a matter of fact, Bynum remained indifferent to this information until June 14, 1972, some months after the trial was concluded and the day that sentence was initially scheduled to be imposed. At that time the issue of prior representation was raised by a new lawyer in connection with the new lawyer's presenta-

tion of a second application for release on bail.

Parenthetically, that is the application from which the new lawyer took an appeal to the Court of Appeals, Second Circuit, and that appeal was heard in the Court of Appeals today, and I am informed by the Statement of the United States Attorney that that appeal was decided adversely to the appellant this afternoon.

Now, in an affidavit submitted avowedly to correct that June 14, 1972 admission, Bynum and the newly-appointed counsel assert that they compiled Bynum's June affidavit hastily and mistakenly, that it was the trial counsel Evseroff and not the defendant Bynum who received notice that a Government witness would appear whom that counsel had represented on a prior occasion.

This attempt at correcting the earlier flat-footed affirmation fails to explain the further statement in attempted explanation of the delay and the complaining of the prior representation which is also made under oath in the earlier affidavit to the effect that, and I quote it: "Defendant never consented and was not in a position to seek or obtain independent legal counsel or advice, other than Mr. Evseroff, on this matter as the trial was proceeding without delay."

The protest contained in this statement, moreover, is groundless. Bynum also had the able assistance of co-counsel at the trial, Mr. Ryder, an out-of-state lawyer, who was given privileges to address the Court and who appeared and argued on Bynum's behalf at the pre-trial suppression hearing. He was present throughout the trial, and he has been Bynum's lawyer for some time, certainly before Mr. Evseroff entered the case.

It is clear beyond peradventure of doubt that Evseroff had disclosed to Bynum, and Bynum's co-counsel at the trial, Evseroff's participation in the state court involving the witness in question.

Bynum's argumentative and ambiguous statements to the contrary are not worthy of credit. The only credible inference to be drawn is that Bynum did not believe that he would be disadvantaged at all by this coincidence which, in fact, was the case. And he waived whatever objection he might have asserted. *Compare United States v. Arlen*, 252 F.2d 491 (2d Cir. 1958).

The only specific prejudice Bynum asserts is trial counsel's refusal to cross-examine the witness on the subject of the assault prosecution. It is well settled that such a line of attack would have been impermissible since the assault prosecution ended in acquittal. *United States v. Sposato*, 446 F.2d 779, 780 (2d Cir. 1971), *United States v. Semensohn*, 421 F.2d 1206 (2d Cir. 1970), *People v. Marendi*, 213 N.Y. 600, 107 N.E. 1058 (1915). *See* Rules 608 and 609, Revised Draft of Proposed Rules of Evidence for the United States Court and Magistrates, March 1971.

On the contrary, Bynum was helped rather than harmed by the coincidence in light of Evseroff's efforts during the trial. *Compare Harrison v. United States*, 387 F.2d 614 (5th Cir. 1968).

Any other inference of possible prejudice is forcefully negated by the trial counsel's vigorous, thorough and penetrating cross-examination of the witness. It constituted an exhaustive attack, indeed, one that was mounted for an inordinate period on the credibility of this informant. No conceivable avenue of evidence pertinent to the witness' credibility or to a defendant's guilt was left unexplored by counsel and every possible theory of defense was pursued. The prior representation had no impact on the handling or the result of the case. Bynum was effectively assisted and suffered no impairment of his right to counsel. *Olshen v. McMann*, 378 F.2d 993 (2d Cir. 1967), Waterman, J., *Harrison v. United States supra, Hayman v. United States*, 205 F.2d 891 (9th Cir. 1953). *Compare United States v. Re*, 336 F.2d 306 (2d Cir. 1964).

In sum, no showing of prejudice to Bynum has been made here. The record is barren both of prejudice and of any possible conflict. There was no possibility of

an adverse interest which could tend to deprive Bynum of an adequate defense. There was no disqualification of the attorney for any professional reason.

The unsuccessful charges against the witness of assault and those against Bynum of a far-flung narcotics conspiracy web were wholly unrelated. There was substantial evidence of Bynum's guilt beyond a reasonable doubt beyond the testimony of the witness Stewart.

A further matter called to the Court's attention by the defendants Bynum and Cordovano including that in relation to alleged threats by the Assistant United States Attorney were so contrived, far-fetched and insubstantial as to require no further comment.

Suffice it to say that the present skirmishing concerning Mr. Evseroff and the Salaway firm are diversionary tactics seemingly utilized to engender confusion and delay.

The defense of the moving parties was not prejudiced and they were not denied a fair trial.

The motion for a new trial or an adjournment of the date of sentence, for an arrest of judgment and dismissal of the indictment are severally denied, with exception to the defendants.

Bynum reasserted his claim before the Second Circuit. On review of the record the Court of Appeals itself held that there had been no conflict of interest, noting the finding that "trial counsel had represented Bynum in an extremely competent manner." *United States v. Bynum*, 485 F.2d 490, 503 (2d Cir. 1973).

Striking down a similar contention in *Olshen v. McMann*, 378 F.2d 993, 994 (2d Cir.), *cert. denied*, 389 U.S. 874, 88 S.Ct. 165, 19 L.Ed.2d 157 (1967) the Court of Appeals noted:

> [w]here, as here, the possible conflict arises from a *prior* representation of a prosecution witness, the primary, if not the only, factor which might deter counsel from staging an effective defense would be his reluctance to divulge or to make use of the knowledge derived from the confidential communications of his former client. . . . [A]ny inference of prejudice . . . is forcefully negated by [counsel's] vigorous cross-examination of [his former client] and his exhaustive attack on [that client's] credibility.

*See also United States v. Alberti*, 470 F.2d 878 (2d Cir. 1972), *cert. denied*, 411 U.S. 919, 93 S.Ct. 1557, 36 L.Ed.2d 311 (1973).

It amply appears from the record that Bynum was in no way prejudiced by the prior representation of Stewart and that beyond reasonable doubt the result of the trial was not affected by the matter complained of. A motion for a new trial essentially is addressed to the discretion of the trial Court and nothing hereon warrants exercise of discretion in favor of a new trial.

## II.

The second alleged basis for relief from the conviction and for a new trial similarly lacks merit. The subject matter thereof was actually raised and litigated at the trial itself and may not be raised four and a half years after Bynum's conviction. There is nothing involved therein which suggests lack of due process nor a meritorious basis for a new trial.

Bynum contends that he was denied a fair and impartial trial in accordance with due process of law in that he was promised by representatives of the government that if he would wear a "Kel Set" and ask certain questions and make certain statements in the presence of a government agent, that the pending charges of his 1968 case would be dismissed and that he would not be prosecuted on "conspiracy charges" which were under investigation, as related to him. He contends that the promise (deal) was not kept by the government.

Bynum admits that an attempt was made by his attorney Evseroff during the trial to bring out the truth about the deal and that a government witness was cross-examined thereon. However, he says that Evseroff failed to pursue the matter to its proper

end and that he was thus deprived of his constitutional right to the "untrammeled and unimpaired" assistance of counsel for his defense. He further says that since he shows "a strong possibility" of a denial or infringement of his constitutional rights he is entitled to an evidentiary hearing upon his claims.

At his trial Bynum testified on direct examination that he had been arrested but not indicted in 1968 for possession of narcotics in the Eastern District of New York. He then described several conversations including one in which unnamed federal inspectors had promised him in exchange for cooperation, "that I would have a license to do whatever I wanted to do." However, when he described the alleged conversation he failed to swear to the immunity promise now included in the current petition. Similarly, on his cross-examination he again described the circumstances of the same arrest and discussed the incident without any suggestion of the promises now claimed. Bynum there claimed that he was coerced into making a tape recording by threats of being jailed, not by a promise of immunity.

The subject matter was again raised at the time of Bynum's sentence following conviction. Bynum's lawyer, Mr. Handman, stated:

I will say further that Mr. Bynum has a record of cooperation with the Government with regard to other narcotics situations, which I believe Your Honor is also familiar with. And I feel that from my knowledge of the facts he has actually in several instances provided assistance to the Government, to various members of the enforcement agencies that they were not able to get elsewhere.

In response thereto AUSA Updike made the following statement:

Mr. Handman made mention of Mr. Bynum's cooperation with the Government on a prior occasion. I would merely set the record absolutely straight with respect to that. You heard that Mr. Bynum cooperated with the Bureau of Narcotics in the making of six cases. Mr. Bynum so testified. And the Government does not dispute that testimony. He testified to that on cross-examination. The Government's position is that those six cases were made on information and in part on the efforts of Mr. Bynum at a time when Mr. Bynum was facing narcotics charges that were pending in the *Eastern District of New York*. Despite Mr. Bynum's protestation that he was framed on those charges, the complaint, as Your Honor well knows, which was in the form of an affidavit, was signed by Special Agent John O'Brien. It stated explicitly that he observed Mr. Bynum with, as I recall, a half kilogram of heroin secreted or stuck into the waistband of his, Mr. Bynum's trousers. This was a direct observation of the Agent.

Whatever problems the Bureau of Narcotics may have had with Agent O'Brien in other contexts, Mr. Bynum has himself testified extensively that he believes Agent O'Brien was an honest police officer, he did his job, that he did it well, and that he had not on any occasion behaved in a manner which a police officer should not behave.

Plainly, it is inconsistent for Mr. Bynum to indicate that he was framed in that situation, unless he is going to retract his statements with respect to Agent O'Brien. It is plain, I think, that Mr. Bynum was not framed in that situation, and that under the duress of those charges pending against him he sought to extricate himself from those charges by cooperating with the Bureau of Narcotics. And he did so. In the Southern District of New York, the ordinary quid pro quo for such cooperation is the filing of a tax count. As Your Honor knows, that gives discretion to the sentencing judge to give a sentence anywhere from two to ten years, with power in the Court to suspend the execution of sentence.

Mr. Bynum, however, by virtue of his prior conviction, would have been a second offender had he been convicted in the Eastern District. And Mr. Bynum, I believe, accordingly, did not even plead guilty to a tax count in the Eastern District which, by virtue of his having been a

second offender, would have required a mandatory minimum sentence of five years. *The charges instead were dismissed* against Mr. Bynum and the Government feels that whatever cooperation was given in that situation has in effect been fully wiped out or expunged by the dismissal of the charges in that case.

I would say, further, that in some ways Mr. Bynum's cooperation, the evidence of the present trial, as clear and convincing as it is, was in some measure given in bad faith, because Mr. Bynum quite plainly, while supplying information which led the Bureau of Narcotics to make other arrests, continued extensively in the narcotics traffic himself. That kind of cooperation, the kind of cooperation which buys a license to continue to traffic in narcotics yourself is in the long term not a useful kind of cooperation to anyone.

Once again, Bynum here repeats matters fully covered during the trial proceedings. Nothing is added by the current petition years later which is not squarely reflected by the trial record herein.

The motion pursuant to § 2255 of Title 28 U.S.C.A. is in all respects denied.

SO ORDERED.