UNITED STATES of America,
Appellee,

v.

Peter Edward KEARSE, Appellant.

No. 942, Docket 71–1056.

United States Court of Appeals,
Second Circuit.

Argued May 28, 1971.

Decided June 10, 1971.

Phylis Skloot Bamberger, The Legal Aid Society, New York City (Robert Kasanof, New York City, of counsel), for appellant.

David G. Trager, Asst. U. S. Atty. (Edward J. Boyd V, of counsel, Edward R. Neaher, U. S. Atty., E. D. N. Y., on the brief), for appellee.

Before KAUFMAN, HAYS and MANSFIELD,* Circuit Judges.

KAUFMAN, Circuit Judge:

This appeal presents the single issue whether the evidence introduced at appellant Kearse's nonjury trial was sufficient to warrant his conviction for knowingly possessing goods stolen from interstate commerce, 18 U.S.C. § 659, for which offense Kearse was sentenced to imprisonment for three years. We hold that it was not.

At approximately 9:30 on the morning of June 15, 1970, a truck containing some 40 cartons of knitwear valued at over $12,000 and destined for Maryland and Puerto Rico was hijacked by three men on the streets of Brooklyn. Agents of the Federal Bureau of Investigation were contacted the following day by an informer who stated that the booty was being stored in the ground floor apartment at 177 Hart Street, Brooklyn. The informer revealed that he had spoken with four individuals on the premises, who appeared to be narcotics users, and that they had offered to sell the admittedly hijacked goods to him, explaining that a quick disposition was essential. Bearing a search warrant obtained on the basis of this and other information provided by the informant, FBI Agents Ahearn and Roussell arrived at the front door of the Hart Street apartment at about 12:30 on the afternoon of June 17. When knocking elicited no response, Agent Ahearn announced his identity and purpose, and demanded entry. Prompted to immediate action by a shuffling sound from within, the agents then broke through the front door and entered a small living room nearly filled with the 40 cartons of knitted goods they were seeking. Defendant Kearse was observed standing in an open archway between the living room and the adjoining kitchen, perhaps six feet from the pile of cartons.

The government introduced no evidence to connect Kearse with the stolen knitwear apart from Kearse's proximity to the goods at the time of the search. No relationship was shown to exist between Kearse and the lessees of the ground floor apartment, John Molloy[1]

---

* Of the United States District Court for the Southern District of New York, sitting by designation, when argument was heard.

1. Molloy was also named as a defendant in the indictment charging Kearse with knowing possession of stolen goods. At the time of Kearse's trial, Molloy was a fugitive and his case was severed from Kearse's. Following Kearse's conviction below, Molloy surrendered and entered a plea of guilty to the indictment.

and Rose Barrows. Kearse's testimony that he maintained a residence elsewhere in Brooklyn was not contested. Nor was Kearse shown to have any right of access to or control of the Hart Street premises. Finally, neither the FBI informant nor the driver of the hijacked truck identified Kearse as one of the men they had encountered in connection with the theft and attempted sale of the knitwear.

Kearse attempted to explain his presence at the Hart Street apartment by testifying at trial that Molloy had invited him there the day before for a dose of methadone. According to Kearse's story he was waiting for Molloy to return with the drug when the FBI agents knocked. Kearse further testified that he had faced away from the living room the entire time he had awaited Molloy's return in the kitchen, and had therefore not noticed the cartons. On cross-examination Kearse admitted that he was addicted to heroin, and refused to explain how he could afford to support his $20–30 daily habit.

In denying the motion for a judgment of acquittal made by Kearse at the conclusion of testimony, Judge Rosling relied heavily on Kearse's failure to respond to the FBI's demand for entry and his incredible denial that he had even seen the cartons. The court reasoned that these circumstances, together with the remote likelihood that one person was responsible for the theft and disposition of the large knitwear shipment, were sufficient refutation of Kearse's defense of unknowing presence. The court concluded in an oral opinion that the evidence proved beyond a reasonable doubt "defendant's relationship to the disposition of the goods," or that Kearse was "involved in the transaction."

We would have little difficulty in sustaining these factual conclusions as reasonable inferences from the evidence before the court. Kearse, however, was charged with a much narrower offense than those described in the trial court's remarks. Conviction for possessing stolen goods under Section 659 requires proof of "dominion and control" over the goods in question. United States v. Casalinuovo, 350 F.2d 207, 209 (2d Cir. 1965). "Presence tells us nothing about what the defendant's specific function was and carries no legitimate, rational, or reasonable inference that he was engaged in one of the specialized functions connected with possession * * *." United States v. Romano, 382 U.S. 136, 141, 86 S.Ct. 279, 282, 15 L.Ed. 2d 210 (1965).

Here the evidence of bare presence, with nothing more, was entirely consistent with the interpretation that Kearse was waiting for his methadone, as he testified. In denying at the trial that he had noticed the stack of boxes, it is not unreasonable to conclude that Kearse was making an effort to extricate himself from suspicious circumstances. But suspicions, even those that cause a defendant to fear conviction, are not proof and the evidence before the court was at least as hospitable to an interpretation consistent with Kearse's innocence of the crime for which he was convicted as to the government's theory that Kearse had dominion over the stolen goods. As Kearse's behavior in the apartment and his performance on the witness stand point no more strongly to the one hypothesis than to the other, we must conclude that Kearse's possession of the illicit knitwear was not established beyond a reasonable doubt. See United States v. Glasser, 443 F.2d 994, —— and N. 7 (2d Cir. 1971).[2]

Reversed.

---

2. The government properly did not urge below, nor does it argue before us, that the evidence established that Kearse aided and abetted possession by an unspecified third party.