**UNITED STATES of America, Appellee,**

v.

**Elvin Lee BYNUM et al., Appellants.**

Nos. 376–401, Docket 72–1857, 72–1884, 72–2101, 72–1763, 72–2142 and 72–2143.

United States Court of Appeals, Second Circuit.

Argued Nov. 17, 1972.

Decided March 14, 1973.

Henry J. Boitel, New York City, for appellant, Elvin Lee Bynum.

Patrick M. Wall, New York City, for appellant, Joseph Cordovano.

Aaron J. Jaffe, New York City, for appellants, Abraham Wright, Lance Small, Newbry Mitchell and Irving Birnbaum.

Frederick T. Stant, Norfolk, Va., for appellants, Fannie Mae Garnett, Jacqueline Fuller Dyson, John Feroldi and Levis Nedd.

Theodore Rosenberg, Brooklyn, N. Y. (Frank A. Lopez, Brooklyn, N. Y., of counsel), for appellant, Vincent Altamura.

H. Elliot Wales, New York City (Michael P. Direnzo, New York City, on the brief), for appellants, John Coniglio and Charles Tuzzolino.

Jerome Lewis, New York City, for appellant, Angelo Mele.

W. Cullen MacDonald, Asst. U. S. Atty., S. D. N. Y., New York City (Whitney North Seymour, Jr., U. S. Atty., S. D. N. Y., New York City, and John W. Nields, Jr., and John M. Bush, Asst. U. S. Attys., S. D. N. Y., New York City, of counsel), for appellee.

Before SMITH, KAUFMAN and MULLIGAN, Circuit Judges.

MULLIGAN, Circuit Judge:

These are appeals by Elvin Lee Bynum, Joseph Cordovano, Abraham Wright, Lance Small, Newbry Mitchell, Irving Birnbaum, Vincent Altamura,

Angelo Mele, John Coniglio, Charles Tuzzolino, John Feroldi, Levis Nedd, Fannie Mae Garnett and Jacqueline Fuller Dyson from judgments of conviction entered on June 27, 28 and July 7, 1972, in the United States District Court for the Southern District of New York, after a trial before Hon. Milton Pollack, United States District Court Judge, and a jury.

The Indictment (71 Cr. 1169) containing three counts was filed on October 13, 1971. All of the appellants were charged with conspiring to obtain and sell narcotics in violation of Title 21, United States Code, §§ 173 and 174 (repealed 1970) and Title 26, United States Code, §§ 4705(a) and 7237(b) (repealed 1970). All of the defendants were found guilty.[1] Counts Two and Three separately charged Levis Nedd and Michael Lebbers (Malachy Libbers) with unlawfully carrying a firearm in the commission of the felony charged in Count One, in violation of 18 U.S.C. § 924. Appellant Nedd was found guilty under Count Two.[2]

In view of the disposition we make here, we need not recite in detail the facts in this drug conspiracy, nor need we discuss the numerous points raised on appeal. Suffice it to say that in addition to the usual sordid operation of purchasing, cutting and packaging large quantities of cocaine and heroin, the conspiracy charged here included criminal assault, planned robberies for the purpose of procuring drugs and the planning of the murder of a suspected informant to insure the continuance of the conspiracy. The Government's case was in the main provided by an informant Stewart, who while acting as a trusted key member of the conspiracy, was simultaneously supplying the Government with detailed information about the criminal activities of his associates. Despite the wealth of information provided by Stewart, which in several instances was corroborated by physical surveillance, the Government also introduced into evidence written transcripts and played recorded telephone conversations of defendants Bynum and Cordovano for the purpose of further supporting Stewart's testimony. For the reasons discussed below, the admission of the evidence has, in our view, raised serious questions of statutory construction and, possibly, of constitutional interpretation, which we are loathe to decide on the basis of the sparse record before us.

The defendant Bynum, the principal figure in the conspiracy, used as his headquarters, a residence on Linden Boulevard in Brooklyn which was occupied by his paramour, the defendant Garnett. On the basis of information from independent informants and the personal knowledge of agents who had

---

1. On June 27, 1972, Judge Pollack sentenced Bynum to a thirty year term of imprisonment and Cordovano to a sixteen year term of imprisonment. Each was fined $20,000.

 On June 28, 1972, Judge Pollack pronounced the following sentences: Mele, to a twenty year term of imprisonment and a $5000 fine; Coniglio, to a twelve year term of imprisonment and a $5000 fine; Feroldi, to a ten year term of imprisonment; Wright, Small, Tuzzolino and Mitchell to seven year terms of imprisonment; Garnett to a six year term of imprisonment; and Altamura, Dyson and Birnbaum to five year terms of imprisonment.

 On July 7, 1972, Judge Pollack sentenced Nedd to concurrent terms of imprisonment of fifteen years on Count One and five years on Count Two. Finding that defendants Bynum, Cordovano, Mele, Feroldi and Coniglio each presented a danger to the community, Judge Pollack denied bail and each is now imprisoned. The remaining defendants are enlarged on bail.

2. Libbers and another defendant, Stanley Sherman, had their motions to dismiss granted. Lillian Bynum, another defendant, had her trial severed on the motion of the Government. Defendant Charles Moody testified for the Government and later pleaded guilty to an Information charging him with participation in the conspiracy in question. Robert Wallock, George Stewart, Robert Nesbitt, Edna Collins and Morty Molin were named as co-conspirators but not as defendants.

worked with Bynum when he was acting as a Government informant, an application was made pursuant to the wiretap authorization provisions of 18 U.S.C. § 2516 to tap the telephone of Garnett at her residence which was believed to be the focal point of Bynum's drug dealing operation. Other means of investigation were deemed to be inadequate. Cf. 18 U.S.C. § 2518(1)(c) & (3)(c).

On January 29, 1971, Judge Anthony Travia, United States District Court, Eastern District of New York, entered an order authorizing the Government to intercept and record telephone communications to and from the Garnett telephone at Linden Boulevard. On January 28, 1971, a second telephone was installed at the Linden Boulevard address. The Government learned of this second telephone through the interception of messages on the first telephone. Judge Travia entered an order on February 12, 1971 authorizing the interception and recordation of messages on the second telephone at Linden Boulevard. Finally on February 18, 1971, an order was entered authorizing the continuance of the first telephone intercept for 14 days so that both taps terminated on March 3, 1971.

 The major concern we have in this appeal is whether or not the electronic surveillance of the two telephones in question was conducted in such a fashion as to minimize the interception of communications not otherwise subject to interception. The statute, § 2518(5),[3] requires that an order authorizing such interception contain such a provision. The extension order of February 18, 1971 failed to contain the limitation; however, since it is a continuation or extension of the initial order, we consider that it incorporates by reference the minimization language of the first order. Appellants maintain, and a reading

of the record would indicate, that every single conversation on these telephones from the time of the installation of the taps until March 3, 1971 was intercepted and recorded by Government agents. Appellants argue that there was no minimization effort here at all and therefore there was a violation of both the statute and the orders authorizing the taps. The Government urges in rebuttal that the appellants made no objection to the introduction of the recordings on this ground before trial, but did so only after the trial was over. At that point, counsel who had made the motion failed to appear on the return date and therefore the motion was dismissed. The Government's argument is inaccurate. On April 13, 1971, Mr. Hochheiser, attorney for Garnett, explicitly moved for the suppression of all the tapped conversations because of the failure of the Government to minimize the interceptions. While no motion for an evidentiary hearing was made, there was a clear argument that since every conversation no matter what its nature was recorded, there could not have been any effort to minimize. Judge Pollack made no decision on the motion at this point. The motion was renewed on trial at the conclusion of the testimony of Inspector Bitzer, Bureau of Narcotics and Dangerous Drugs, who supervised the wiretap. The motion was denied after trial and dismissed when counsel failed to appear. In view of these facts we find that the minimization issue was raised in timely fashion both before and during the trial and is properly raised on appeal. The Government further urges that neither Bynum nor Cordovano has standing to raise the minimization question. Since the phone was in Garnett's home and listed in the name of one Fred Garnett, we have no doubt that she has properly raised the issue. Moreover, Bynum was clearly an "aggrieved person" as defined

---

3. 18 U.S.C. § 2518(5) provides in pertinent part:
Every order and extension thereof shall contain a provision that the authorization to intercept shall be executed as soon as practicable, shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter, and must terminate upon attainment of the authorized objective, or in any event in thirty days.

in 18 U.S.C. § 2510(11) [4] and therefore is given leave to raise the question of the legitimacy of the surveillance under 18 U.S.C. § 2518(10) [5] Since Bynum was the central figure in the conspiracy, a reversal as to him might well render the convictions of the lesser figures in the scheme vulnerable and entitle them all to new trials. See United States v. Weiss, 103 F.2d 348, 352 (2d Cir.), rev'd on other grounds, 308 U.S. 321, 60 S.Ct. 269, 84 L.Ed. 298 (1939).

The issue of minimization has never been considered by this Court. Appellants rely on United States v. King, 335 F.Supp. 523 (S.D.Cal.1971) and United States v. Scott, 331 F.Supp. 233 (D.D.C. 1971), where as in this case, all conversations were monitored and since a high percentage of irrelevant or innocent conversations were intercepted, violations of the statute were found to exist. In United States v. Focarile, 340 F.Supp. 1033 (D.Md.1972), the court made the comment that if no attempt at all is made to minimize the interception of innocent calls, there would not only be a blatant violation of the statute but probably a violation of Fourth Amendment

Constitutional rights (340 F.Supp. at 1046).

A different approach supporting the position of the Government although not cited by the United States, is found in United States v. Cox, 462 F.2d 1293 (8th Cir. 1972). In that case again there was 100% interception of telephone conversations with a substantial number of the calls being unrelated to the drug conspiracy charged. Chief Judge Matthes found the minimization issue to be purely statutory and not of constitutional dimension. That court found that the minimization question was to be determined on a case by case basis with the practical observation that the determination of whether or not a conversation was innocent or irrelevant often could not be made until the conversation was over and the interception terminated. The court further questioned whether suppression of *all* intercepted conversations was in any event the proper remedy for a violation of the statute in view of the civil remedy for damages against the investigating officers provided by 18 U.S.C. § 2520.[6] The court,

---

4. "Aggrieved person" means a person who was a party to any intercepted wire or oral communication or a person against whom the interception was directed.

5. 18 U.S.C. § 2518(10) provides in pertinent part:
 (a) Any aggrieved person in any trial, hearing, or proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States, a State, or a political subdivision thereof, may move to suppress the contents of any intercepted wire or oral communication, or evidence derived therefrom, on the grounds that—
 (i) the communication was unlawfully intercepted;
 (ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or
 (iii) the interception was not made in conformity with the order of authorization or approval.
 Such motion shall be made before the trial, hearing, or proceeding unless there was no opportunity to make such motion or the person was not aware of the grounds of the motion. If the motion is

granted, the contents of the intercepted wire or oral communication, or evidence derived therefrom, shall be treated as having been obtained in violation of this chapter. The judge, upon the filing of such motion by the aggrieved person, may in his discretion make available to the aggrieved person or his counsel for inspection such portions of the intercepted communication or evidence derived therefrom as the judge determines to be in the interests of justice.

6. See, contra, United States v. George, 465 F.2d 772 (6th Cir. 1972), where there was a violation of the wiretap order authorizing surveillance only when particular individuals were using the telephone. The electronic interception was conducted without regard to the terms of the order. The court finding that the protective limitations of the order were defeated, found the wiretap evidence inadmissible and ordered a new trial which would exclude any wiretap evidence procured in violation of the order. The court found not only a violation of the statute but constitutional infirmity under Desist v. United States, 394 U.S. 244, 246, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969).

however, emphasized that the District Court judge who authorized the wiretap order closely supervised the interceptions, requiring reports from the United States Attorney at five day intervals. The transcripts of these reports were made available to the Circuit Court on appeal.

■ It seems evident that we are faced here with weighty issues of first impression in this Court which may well be raised again in other trial and appellate litigation. Unlike the district court cases which have considered the minimization problem in other Circuits, we have here no breakdown or analysis of the intercepted conversations. We do know that 198 reels of tape containing more than 3000 conversations were made available to appellants before trial. What percentage of these are irrelevant or innocuous we do not know. The record only indicates that on one phone between January 30, 1971 until February 13, 1971, some 770 completed telephone calls were intercepted. Of these, 108 allegedly relate to illegal drug traffic and 21 refer to other criminal activity. This information is provided in the affidavit of an Inspector of the Bureau of Narcotics and Dangerous Drugs in support of the extension of the initial wiretap order of Judge Travia.

A reading of the testimony of the agent who supervised the surveillance would indicate that all conversations were recorded but only those presumably inculpatory were ever transcribed. The mischief lies in the interception obviously and what was not transcribed remains unknown. Although there is an allegation that the conversations were coded and guarded, which may account for the total interception, we are provided with no explanation of why some minimization was not possible to achieve. We know nothing of the nature or tenor of those calls which might be deemed innocent. The orders of Judge Travia required the United States Attorney to make reports at five day intervals indicating the progress of the investigation and the need for continuing interception.

The record does not indicate whether the reports were made, and none have been made available to us. In short we do not know how closely the wiretap was supervised under the terms of the orders.

In view of the importance of the issues here involved we believe the best course to follow now is to remand to Judge Pollack for an evidentiary hearing to develop a record which will clarify the points we have discussed so that a proper determination can be made by this Court. This panel will retain jurisdiction of this matter. After findings are made below, this Court will require supplemental briefs of the parties on the minimization question, including the issue of the appropriate remedy in the event it is ultimately determined that either the minimization order issued by Judge Travia, or the minimization provision of the statute, was violated in this case. The parties will also brief the question whether such violations, if such be found, are, or are not, under the circumstances of this case, to be deemed violative of the Fourth Amendment.

Remanded.