**UNITED STATES of America, Appellee,**

v.

**Theron CLARK, Appellant.**

**No. 861, Docket 73-2790.**

United States Court of Appeals, Second Circuit.

Argued March 7, 1974.

Decided June 5, 1974.

Michael A. Young, New York City (William J. Gallagher, The Legal Aid

**536**

Society, New York City, of counsel), for appellant.

David A. DePetris, Brooklyn, N. Y. (Edward John Boyd, V, U. S. Atty. for the Eastern District of New York, Paul B. Bergman, Asst. U. S. Atty., of counsel), for appellee.

Before MOORE, MANSFIELD and OAKES, Circuit Judges.

OAKES, Circuit Judge:

This is an appeal from a second conviction on two counts of possession of narcotics with intent to distribute in violation of 21 U.S.C. § 841(a)(1). The first conviction was reversed by this court in a decision reported at 475 F.2d 240 (1973). On this appeal appellant claims that the search which resulted in discovery of the narcotics was unlawful, that evidence of the street value of the narcotics was improperly admitted, that the court below erred in refusing a requested charge on the issue of intent, and that appellant was improperly excluded from a portion of his suppression hearing. For the reasons below we affirm the conviction.

1. *The Search.*

■ On May 24, 1972, appellant attempted to board a domestic flight at LaGuardia Airport.[1] At the boarding gate a marshal and an airline supervisor, who had already been informed that there was a "selectee" on this flight, noted that appellant's ticket was specially marked as such. Appellant then, as did all prospective passengers, went through a magnetometer which indicated that he had metal either on his person or in the bag which he was carrying. The supervisor then asked appellant for some identification. Appellant said he had none. According to the marshal, appel-

lant seemed "stupefied," "like he wasn't himself." With that the marshal frisked appellant and found nothing. He directed appellant to open his bag. There he saw a bulky object wrapped in a towel. He unwrapped it and found a box, which he opened in the belief that it might contain explosives. Inside were glassine and other envelopes containing what later was determined to be narcotics. The court below after the suppression hearing determined that the search was lawful first on the basis that it met the test prescribed by this court in United States v. Bell, 464 F.2d 667 (2d Cir.), cert. denied, 409 U.S. 991, 93 S.Ct. 335, 34 L.Ed.2d 258 (1972), and second on the basis of consent.

We agree with the court below that the test of *Bell* has been met in this case. Here "specific, articulable facts exist[ed] to support a reasonably prudent man's belief that his or others' safety might be in danger. . . ." United States v. Albarado, No. 73–1954, 495 F.2d 799 (2d Cir. Apr. 1, 1974), at 810. In *Bell* those facts were the defendant's meeting the profile, activating the magnetometer, having no identification, and admitting he was out on bail pending trial for attempted murder. Here appellant met the profile, activated the magnetometer, could produce no identification, and acted strangely, appearing in a stupor or "not himself." Upon these facts the marshal was well justified in searching both appellant's person and the bag he carried.

2. *The Evidence of the Street Value of the Narcotics.*

■ At trial, counsel for appellant stipulated to a chemist's report which indicated both the elements present in certain envelopes which had been tested and the total weight of all the elements

1. As was noted in the first appeal, this case arises in the context of the anti-hijacking system in effect at that time at LaGuardia Airport. An important part of that system was the "profile" screening method, *see* United States v. Albarado, No. 73–1954, 495 F.2d 799 (2d Cir. Apr. 1, 1974), at 802; United States v. Ruiz-Estrella, 481 F.2d 723, 724 (2d Cir. 1973), whereby those meeting the "profile" were designated "selectees" and their tickets were specially marked so that those at the boarding gate would be able to identify them.

present in those envelopes. There was no evidence, however, of either the actual amount of controlled substances in the envelopes tested or the percentage of the powder which was in fact "controlled substances." In other words, while appellant stipulated to the fact that there were controlled substances in at least some of the packets, neither did he stipulate to nor did the Government prove *how much* there was. The Government nevertheless sought to admit evidence as to the "street value" of the envelopes seized. Its expert witness estimated the street value of the envelopes seized, the estimate being based on his experience in undercover purchases, conversations with informants, literature of the BNDD, and, perhaps most importantly, the manner in which this particular material was packaged. Appellant's claim is that the evidence was improperly admitted since, without knowing how much heroin or cocaine was involved, there would be no genuine basis for an estimate of "street value."

While knowledge of the actual amount of heroin in the powder would be the best basis for an opinion as to the value of the narcotics envelopes, it is not the only basis. Experience with the values of envelopes of the same size and shape, concededly containing some heroin, is another basis and was present here. Knowledge of the actual contents would not of itself insure an accurate opinion as to "street value." As with many other commodities, glassine envelopes of heroin are not always subject to chemical analysis prior to sale. A buyer must often rely on what amounts to the seller's warranty as to the contents. Thus the "street value" of packaged heroin may depend as much on the appearance of the package as the actual percentage of heroin and powder. Inasmuch as there was a sufficient basis for the expert testimony to be admitted, whatever infirmities existed in his testimony as a result of the lack of a laboratory analysis went to the weight of his testimony and not its admissibility, once it was established (as it was here by stipulation)

that there was heroin in the envelopes. *Cf.* Mims v. United States, 375 F.2d 135, 143–144 (5th Cir. 1967); United States v. Licht, 158 F.2d 458, 460 (2d Cir. 1946), cert. denied, 339 U.S. 824, 67 S.Ct. 863, 91 L.Ed. 1274 (1947).

### 3. *The Refused Request to Charge the Jury.*

Appellant requested a charge to the jury to the effect that the fact that a person may have been under the influence of drugs at the time of the commission of a crime may negate the existence of specific intent. While such a charge may well be required in the proper case, *see, e. g.*, Allen v. United States, 239 F.2d 172, 173 (6th Cir. 1956), this is not such. The specific intent the Government had to prove in this case was that appellant intended to distribute the narcotics in question. The fact that appellant may have been an addict, for which there was some evidence, is irrelevant to whether when appellant obtained the narcotics or during the period in which he had it he was under such influence. Here there was no evidence at all that appellant was acting under the influence of drugs when he acquired the narcotics or, alternatively, when his intent was formed—arguably when he left North Carolina to come to New York, according to his own tale, to bring back a package for someone. In short, there was no evidence in the record which would require such a charge.

### 4. *Appellant's Exclusion from Part of His Suppression Hearing.*

In United States v. Bell, *supra*, we upheld the exclusion of a defendant from that portion of a suppression hearing dealing with the criteria that make up the "profile," and this partial exclusion was reaffirmed in appellant's first appearance before this court. 475 F.2d at 244–245. Appellant claims now, however, that because the profile system was no longer in use at the time of the suppression hearing, there was no compelling need to maintain the confidentiality which justified the partial exclu-

sion. Primarily, it should be noted that appellant did not object below to the partial exclusion, and may be said therefore to have waived his right of confrontation. But even were there no waiver, there is no evidence that the profile has been abandoned forever as a weapon to combat air piracy. In the future it may once again be used. The fact that the FAA has at the present time on its own initiative withdrawn the profile system does not mean that the necessity of preventing public disclosure of the profile criteria found in United States v. Bell, *supra*, has ceased to exist. Hence, appellant's exclusion from that portion of the suppression hearing was proper.

Judgment affirmed.