**UNITED STATES of America, Appellee,**

v.

**Stuart STEINBERG et al., Defendants-Appellants.**

Nos. 1148, 1150, 1151 and 1200, Dockets 75–1150, 75–1163, 75–1164 and 75–1166.

United States Court of Appeals, Second Circuit.

Argued July 17, 1975.

Decided Nov. 10, 1975.

---

Stanley S. Arkin, P. C., New York City (Stanley S. Arkin, Mark S. Arisohn, New York City, of counsel), for appellant Steinberg.

William J. Gallagher, The Legal Aid Society, New York City (Sheila Ginsberg, New York City, of counsel), for appellant Capo.

Litman, Friedman & Kaufman, New York City (Lewis R. Friedman, Herman Kaufman, New York City, of counsel), for appellant Kaye.

Stanley L. Siegel, New York City, for appellant Parker.

Paul J. Curran, U. S. Atty., S.D.N.Y. (Michael B. Mukasey, John D. Gordan, III, Asst. U. S. Attys. of counsel), for appellee.

Before MOORE, FRIENDLY and VAN GRAAFEILAND, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

Appellants Stuart Steinberg, William Capo, Howard Kaye and James Parker appeal from judgments of conviction entered after a jury in the Southern District of New York found them guilty of conspiracy to violate the federal narcotics laws (21 U.S.C. § 846 (1970) ) and, on varying counts, of knowingly using the telephone to cause and facilitate the conspiracy (21 U.S.C. § 843(b) (1970) ).[1] Steinberg and Capo also appeal from their convictions on three substantive counts of distributing and possessing with intent to distribute phencyclidine hydrochloride ("PCP"), a Schedule III controlled substance.

1. Seven others were co-defendants in the conspiracy count. Five pleaded guilty, one died, and the case against the seventh was severed.

The convictions of Steinberg and Capo are affirmed. Because the evidence was insufficient to link appellants Kaye and Parker with the conspiracy charged, their convictions are reversed.

### FACTS

On June 26, 1973, an informant, Ricky Citrola, introduced DEA Special Agent Brian Noone to appellant Steinberg as the representative of a man with money to invest in drugs. Steinberg gave Noone a .21 gram sample of PCP and indicated that he could supply large quantities of the drug. The next day Noone purchased two ounces of PCP for $2,400, and on July 10, one-half pound for $8,000. Appellant Capo was one of the suppliers of the PCP involved in these deliveries.

In various telephone conversations, occurring between July 10 and July 18, Noone and Steinberg discussed a 20-pound PCP transaction and also negotiated the terms of a 50-pound deal for $680,000. A wiretap was then installed on Steinberg's telephone following which Noone called Steinberg and confirmed the 50-pound purchase. Steinberg also agreed to provide a cocaine sample.

On July 24, Steinberg was informed by one of his suppliers that a hold would have to be put on the 50-pound transaction because the supplier's source had been arrested. Steinberg informed Noone of a "delay" in the PCP deal and suggested proceeding instead with a cocaine sale which had also been discussed.

To his dismay, Steinberg found that the cocaine which he had been planning to sell to Agent Noone was of inferior quality. He therefore called appellant Kaye seeking 50 pounds of the drug. Kaye said he could obtain it in California but informed Steinberg on the next day that he would not "do" the transaction.

On July 26 the wiretap on Steinberg's phone intercepted a call from appellant Parker to one Sara Werman in which he arranged the purchase of a quarter ounce of hashish oil for $125. Parker told Werman that she should deliver the oil to Steinberg's place and that Steinberg would give her the money if he was not there. Werman dropped the drug off, and later that evening discussed a potential one-ounce transaction with Parker.

During the following week Steinberg expanded his efforts to make a large-scale sale to Noone, offering large quantities of seconals and tuinals, hashish, and marijuana, without success.

### Adequacy of Wiretap Applications and Orders

Appellants Steinberg and Capo vigorously assail the denial of their motion to suppress the information obtained from the wiretap. They contend that the application for the wiretap order did not contain the requisite "full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous . . .."[2] 18 U.S.C. § 2518(1)(c) (1970). See 18 U.S.C. § 2518(3)(c) (1970).

The application, which merely tracked the language of section 2518(1)(c), incorporated by reference the supporting affidavit of Agent Noone. Paragraphs 4 through 9 of that affidavit describe the progress of Noone's investigation, beginning with his introduction to Steinberg and including the three PCP deliveries which had taken place. The affidavit indicates that the two PCP sales had been initiated and arranged by telephone, and that Steinberg, at least upon occasion, contacted his suppliers in this

**2.** Appellant Steinberg also attacks the order renewing the wiretap on similar grounds. Since Steinberg's arguments with regard to the application for renewal are directed at language similar to that used in the original documentation, our discussion of the adequacy of this language in the original application is dispositive of the adequacy of its renewal counterpart.

manner. On one of these occasions, Noone heard Steinberg assure them that Noone would not be present when a PCP delivery was made, that Steinberg was aware that the suppliers did not want to meet Noone and that Noone did not want to meet them. The affidavit goes on to describe the arrangements (largely telephonic) which had been made for the 20-pound PCP purchase. Based on Noone's experience, the previous deliveries and Steinberg's representation that he could supply an unlimited quantity of PCP from an out-of-state laboratory, Noone concluded that Steinberg and his suppliers were engaged in major distributions of PCP. Paragraph 11 of the affidavit states:

> Normal investigative procedures have not succeeded in establishing the full extent of the activities conducted by Stuart L. Steinberg related to the purchase or sale of controlled substances, nor have the location and identity of the source of Stuart L. Steinberg's supply been established. Normal investigative procedures reasonably appear to be unlikely to succeed in obtaining the evidence necessary for the following reasons:

> A. At this time there is no known undercover access to his supplier and no chance of developing such access because of the covert manner in which Stuart L. Steinberg operates; and

> B. My experience and the experience of other Special Agents of the Drug Enforcement Administration has shown that individuals dealing in large quantities of narcotics are particularly covert in their activities and wary of surveillance by Federal and State law enforcement personnel. Such dealers very rarely keep records, deal personally with a very few trusted individuals and isolate themselves from other individuals in the distribution organization.

Although the affidavit provides little factual basis for concluding that normal investigative techniques had not "suffice[d] to expose the crime," *United States v. Kahn*, 415 U.S. 143, 153 n. 12, 94 S.Ct. 977, 39 L.Ed.2d 225 (1974), paragraphs (1)(c) and (3)(c) of § 2518 are in the disjunctive; and the Government's main reliance is upon the second alternative provided by the statute.[3] We must view the affidavit as a whole and "in a practical and commonsense fashion," S.Rep. No. 1097, 90th Cong., 2d Sess., 1968 U.S.Code Congressional and Administrative News, p. 2190. While the Government will be well advised in the future to include a more detailed factual statement indicating the inadequacy of other investigative techniques, the affidavit herein did contain enough data to permit the authorizing judge reasonably to conclude that other means would be unlikely to succeed in revealing the scope of Steinberg's operation and his sources of supply.

When one endeavors to prove a negative, it is difficult to be very specific about it; and we are loathe to set impossibly burdensome standards. *See United States v. Staino*, 358 F.Supp. 852, 856–57 (E.D.Pa.1973); *United States v. Falcone*, 364 F.Supp. 877, 888–89 (D.N.J. 1973). We are satisfied that the Government has substantially complied with the statutory mandate, and we note that on oral argument appellants could advance no logical alternative to wiretapping to ascertain the details of Steinberg's operation. Indeed, wiretapping is particularly appropriate when the telephone is routinely relied on to conduct the criminal enterprise under investigation. *Falcone, supra,* 364 F.Supp. at 889.

Assuming *arguendo* that the wiretap application was sufficient on its face, appellant Capo nevertheless contends that he is entitled to a hearing to

---

**3.** This conclusion is supported by paragraph 3 of the affidavit in which Noone stated: "I allege the facts contained in the numbered paragraphs to show that: . . . (c) Normal investigative procedures reasonably appear unlikely to succeed, or are too dangerous to be used . . . ."

test the truth of certain statements made therein. To be entitled to such a hearing, there must be "an initial showing of falsehood or other imposition" on a judicial officer. *United States v. Dunnings,* 425 F.2d 836, 840 (2d Cir. 1969), *cert. denied,* 397 U.S. 1002, 90 S.Ct. 1149, 25 L.Ed.2d 412 (1970).

■ Capo claims to have made this showing in three different ways. None is persuasive. His claimed "discrepancy" between Steinberg's open dealings with Noone and Noone's allegation of covert operations was no discrepancy at all insofar as Steinberg's suppliers were concerned. His argument that failure to disclose the true nature of Ricky Citrola's relationship with the Government constituted a misrepresentation by omission is defective in its assumption that Noone recognized Citrola as a source for the information sought to be obtained. The affidavit did not say that there was no known undercover access to Steinberg but rather that there was no known access to Steinberg's suppliers because of his modus operandi. On August 6, well after the date of the Noone affidavit, Steinberg himself indicated that Citrola would have to be introduced to Steinberg's suppliers. Finally, we decline Capo's invitation to find a misrepresentation from Noone's failure to mention that on July 10, 1973, Capo was observed by DEA Agent Jordison entering Steinberg's apartment building. There is no indication that Noone was aware of this fact when he prepared his affidavit nor any evidence that Capo's identity or his role as a supplier was known even to Jordison at the time of the wiretap application. We conclude that Capo has not made the showing prerequisite to a hearing on the veracity of the Noone affidavit.

■ Steinberg's remaining arguments relating to the wiretap application and order can be disposed of briefly. He initially asserts that the application neither requested, nor set forth facts justifying, continued interception of communications after the first overheard narcotics-related conversation and that, therefore, subsequent interceptions were illegal under 18 U.S.C. § 2518(1)(d) (1970). However, permission to conduct extended wiretapping was clearly requested, and Agent Noone's affidavit established probable cause to believe that additional communications of the type sought would occur after the initial interception. Indeed, the very scope of the operations described in the affidavit made it highly likely that numerous narcotics-related communications would take place in the future. *See* 1968 U.S.Code Congressional and Administrative News, *supra,* at p. 2190.

Finally, Steinberg contends that the language in the wiretap order was not sufficiently precise, either as to scope or duration, to comport with Fourth Amendment requirements as set forth in *Berger v. New York,* 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967) and *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). This claim is without merit. Judge Stewart's order authorized wiretapping, with progress reports at five-day intervals:

> Until communications are intercepted which reveal the details of the scheme which has been used by Stuart L. Steinberg and others as yet unknown, to distribute, deliver and possess with the intent to distribute and otherwise illegally deal in narcotics and dangerous drugs, and the identity of their confederates, their places of operation, and the nature of the conspiracy involved therein or for a period of twenty (20) days from the date of the order, whichever is earlier.

■ When, as here, a continuing course of criminal conduct is involved, a wiretap order must necessarily be framed flexibly enough to permit interception of "any statements concerning a specified pattern of crime." *United States v. Tortorello,* 480 F.2d 764, 780 (2d Cir.), *cert. denied,* 414 U.S. 866, 94 S.Ct. 63, 38 L.Ed.2d 86 (1973). *See also United States v. Poeta,* 455 F.2d 117, 121 (2d Cir. 1972). Though the instant order

was couched in general terms, the interceptions authorized thereby were clearly limited in purpose and duration to the narcotics offenses described. This was sufficient to satisfy the Fourth Amendment in the context of an ongoing drug operation. Judge Stewart's use of interim reports as a means of imparting maximum specificity into an order which, of necessity, had to be broadly phrased removed any doubt on this score.[4]

### The Charge

At trial, Steinberg sought to show that, due to his chronic drug intoxication, he lacked the specific intent required by the crimes with which he was charged. Although the judge charged as requested on this issue, he also included Steinberg in an insanity instruction which was applicable only to Kaye. In so doing he erred. Steinberg's lack of specific intent defense, based on his asserted abnormal mental condition, while superficially similar to the mental defect or disease defense relied on by Kaye, is legally distinct and less difficult to establish. *United States v. Brawner*, 153 U.S.App.D.C. 1, 471 F.2d 969, 998–1003 (1972); *United States v. Freeman*, 357 F.2d 606 (2d Cir. 1966).

 The error does not require reversal, however. The court offered to correct its charge, although not in the precise manner desired by counsel. More to the point, we do not believe that Steinberg was entitled to his requested charge at all. This defense, which has a most limited application to a continuing course of conduct like Steinberg's, required proof. *See United States v. Clark*, 498 F.2d 535, 537 (2d Cir. 1974). Although there was evidence that Steinberg used drugs, his lay witness did not testify as to specific instances of drug intoxication,

and his expert witness had no knowledge of how the drugs affected him or how much of them he took in 1973. There was thus no proof of drug intoxication at times which were relevant to the crimes. Steinberg, therefore, received a more favorable charge than that to which he was entitled.

 Steinberg also claims error in the trial court's refusal to charge that Steinberg's allegedly susceptible mental state caused by drug intoxication could be considered in weighing the inducement element of his entrapment defense. We do not agree. Inducement is not established by showing how little it would take to cause a particular defendant to commit a crime. Rather, the focus is on the nature and extent of the Government's invitation. *United States v. Riley*, 363 F.2d 955, 957–58 (2d Cir. 1966); *United States v. Sherman*, 200 F.2d 880, 882–83 (2d Cir. 1952). Here the Government did not seriously dispute that, to use some of Judge Hand's words, it initiated, broached or suggested the commission of the offense charged. Steinberg's real contention seems to be rather that, because of his drug addiction, acts that would normally constitute such uncontradicted evidence of propensity as to eliminate any need for an entrapment charge should not be so regarded. However, in *United States v. Henry*, 417 F.2d 267 (2d Cir. 1969), *cert. denied*, 397 U.S. 953, 90 S.Ct. 980, 25 L.Ed.2d 136 (1970), we rejected a similar contention even in a case where the defendant allegedly was experiencing withdrawal symptoms.

### Wire Violations Offenses

Each appellant was convicted on one or more counts of using a communications facility "in committing or in

---

4. Steinberg also argues that the August 20, 1973, renewal order was unconstitutionally broad in scope because it authorized a flat 10-day extension of the original order without further stating that interceptions must cease upon attainment of the objective of the authorization. *See* 18 U.S.C. § 2518(5) (1970). As a renewal of the July 20 order, the August 20 extension incorporated by reference the limitation language of the original order. *United States v. Bynum*, 475 F.2d 832, 835 (2d Cir. 1973), *vacated and remanded on other grounds*, 417 U.S. 903, 94 S.Ct. 2598, 41 L.Ed.2d 209 (1974).

causing the commission of any act or acts constituting a felony" under the narcotics laws. 21 U.S.C. § 843(b) (1970). In each instance, the "act constituting a felony" was "the conspiracy set forth in Count One" of the indictment. Appellant Steinberg contends that the § 843(b) counts fail to charge a crime because a conspiracy is an "agreement" and not an "act" within the meaning of § 843(b). He supports this claim by comparing § 843(b) with its predecessor, 18 U.S.C. § 1403(a) (1964), which proscribed use of a communications facility in committing "any act or acts constituting an offense *or a conspiracy to commit an offense . . . .*" Emphasis added. The failure to carry over the conspiracy language of § 1403(a) to its successor is said to evince an intent not to make narcotics conspiracies subject to communications facility charges.

■ We reject this argument. We see no reason why the making of a conspiratorial agreement is any less an "act" within the meaning of § 843(b) than the actual distribution of narcotics. Section 843(b) proscribes acts, not overt acts.

■ Moreover, the result contended for by Steinberg is totally at odds with the general purpose of the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 801 *et seq.*, which sought to strengthen existing law enforcement authority in the field of drug abuse, not weaken it. H.R.Rep. 91–1444, 91st Cong., 2d Sess., 1970 U.S. Code Congressional and Administrative News at pp. 4566, 4657. Here canons of statutory construction must give way to common sense. *See United States v. Whitridge,* 197 U.S. 135, 143, 25 S.Ct. 406, 49 L.Ed. 696 (1905). Surely, if Congress had intended to carve conspiracy out of § 843(b), such a clear break with prior law would have prompted some legislative discussion. However, the only specific reference to § 843(b) in the legislative history concerns a prohibition against using a communications facility "in committing or facilitating the com-

mission of a felony . . . ." *Id.* at 4616. Our construction of § 843(b) is wholly consistent with this statement of legislative purpose.

### Conspiracy Issues

Once again, we are met with the claim of a single conspiracy charged and multiple conspiracies proven. *See, e. g., United States v. Miley,* 513 F.2d 1191, 1205 (2d Cir. 1975). Once again, after reviewing the record, we conclude that the jury was entitled to find but a single conspiracy.

■ The evidence satisfactorily established that appellant Steinberg was the key figure or middleman in an organization engaged in the large scale distribution of PCP and cocaine. His sources of supply included appellant Capo and at least four other individuals who pled guilty to the conspiracy charge. In view of the substantial quantities involved, knowledge of the vertical scope of the operation may reasonably be imputed to the individual co-conspirators. They could hardly have believed that the large amounts of drugs received by Steinberg were not to be resold. *United States v. Bynum,* 485 F.2d 490, 495–96 (2d Cir. 1973), *vacated and remanded on other grounds,* 417 U.S. 903, 94 S.Ct. 2598, 41 L.Ed.2d 209 (1974). Moreover, there was ample evidence to demonstrate their awareness of the conspiracy's horizontal scope. *See United States v. Borelli,* 336 F.2d 376, 383 (2d Cir.), *cert. denied sub nom. Cinquegrano v. United States,* 379 U.S. 960, 85 S.Ct. 647, 13 L.Ed.2d 555 (1964); *United States v. Miley, supra,* 513 F.2d at 1207. Indeed, most of the individuals on the supply level were mutual friends.

■ Although the judge was justified in submitting the case to the jury on the theory of a single conspiracy, this does not end the case as to appellants Kaye and Parker. Because there was insufficient evidence that these appellants "entered, participated in, or furthered the conspiracy," *United States v. Cianchetti,* 315 F.2d 584, 587 (2d Cir. 1963), we re-

verse their conspiracy convictions and their substantive communications facility convictions, which are predicated thereon.

Although Kaye did tell Steinberg that he could get 50 pounds of cocaine in California "in fifteen minutes," he was skeptical that Steinberg actually was involved in a 50-pound deal. Moreover, he was reluctant to get involved in a transaction of the magnitude proposed by Steinberg because he feared Mafia involvement and "didn't want to be killed." Following Steinberg's second call, Kaye unequivocally disassociated himself from the venture and four days later reiterated to Steinberg that he "wanted nothing to do with it."

As in *United States v. Cianchetti, supra*, 315 F.2d at 587–88, rather than revealing a stake in the outcome of the conspiracy, Kaye's statements were equivocal at best. There was no "fixed agreement" to participate; and while Kaye's motives may not have been "wholly laudatory," the fact remains that he did abstain. *Id.* In this context, Kaye's false exculpatory statement upon his arrest about his connection with Steinberg is entitled to little weight. *See United States v. Kearse*, 444 F.2d 62, 64 (2d Cir. 1971).

The case of appellant Parker is more troublesome. Parker did purchase a small quantity of drugs, and Steinberg participated to some extent in this transaction. However, there was no proof that this was part of Steinberg's operations except that Parker telephoned from Steinberg's apartment regarding the purchase and the hashish oil was delivered there and paid for with money loaned to Parker by Steinberg. There was no evidence that Parker resold the drug to Steinberg. In fact, Steinberg told a third party that Parker was the man to see for "oil."

■ The proof demonstrates little more than that Parker and Steinberg were friends and fellow drug users. Association with a conspirator, without more, is insufficient to establish the req-

uisite degree of participation in a conspiratorial venture, *see United States v. Ragland*, 375 F.2d 471, 477 (2d Cir. 1967), *cert. denied*, 390 U.S. 925, 88 S.Ct. 860, 19 L.Ed.2d 987 (1968); *United States v. Fantuzzi*, 463 F.2d 683, 690 (2d Cir. 1972); nor does it provide a sufficient basis for the admission of hearsay statements of alleged co-conspirators. *Id. United States v. Purin*, 486 F.2d 1363, 1369 (2d Cir. 1973), *cert. denied*, 417 U.S. 930, 94 S.Ct. 2640, 41 L.Ed.2d 233 (1974), relied on by the Government, is factually inapposite to this case.

We believe that Parker's motion for a new trial should have been granted, and we remand to the District Court for this purpose. Proof of Kaye's involvement in the conspiracy being totally absent, we think the interests of justice are best served by directing a judgment of acquittal as to him. It is so ordered.

Judgments of conviction as to the defendants Steinberg and Capo are affirmed. Judgments of conviction as to the defendants Parker and Kaye are reversed with directions.

HENRY J. FRIENDLY, Circuit Judge (concurring and dissenting):

I join in the majority's disposition of this appeal except for its directing of a new trial of Parker after correctly reversing for lack of proof his convictions on the conspiracy count and a related count for use of a communications facility in furtherance of the conspiracy. My brother Van Graafeiland's opinion convincingly demonstrates that the Government failed in its proof of Parker's participation in the conspiracy and that an acquittal ought to have been directed. Although *Bryan v. United States*, 338 U.S. 552, 70 S.Ct. 317, 94 L.Ed. 335 (1950), sustains our power to direct a new trial rather than a judgment of acquittal under such circumstances, it does not demand that the power be exercised in a case like Parker's where there is no reason for thinking, as the majority of the Court of Appeals did there, that "the defect in the evidence might be supplied on another trial. . . ." 338 U.S. at

559, 70 S.Ct. at 321. For a still more restrictive reading of *Bryan, see United States v. Howard*, 432 F.2d 1188, 1191 (9 Cir. 1970) (concurring opinion of Judges Ely and Hufstedler). At the very least the district court should be left free to decide, as Justices Black and Reed suggested in *Bryan*, 338 U.S. at 560, 70 S.Ct. 317, whether in light of this court's opinion a new trial should be granted or a judgment of acquittal entered with respect to Parker. The Government, of course, is free, if it should so desire, to seek a new indictment of Parker for the substantive offenses indicated by its evidence.