UNITED STATES of America

v.

Frank CARUSO et al., Defendants.

No. 75 CR 1157(MP).

United States District Court,
S. D. New York.

July 1, 1976.

848

RobertRobert B. Fiske, Jr., U. S. Atty., S. D. N. Y., by Carl M. Bornstein, Sp. Atty., Dept. of Justice, New York City.

LaRossa, Shargel & Fischetti, New York City, by James M. LaRossa and Ronald Fischetti, for defendant Caruso.

Murray Richman, New York City, for defendant Dituri.

Aaron Slavetsky, New York City, for defendants DiRienzo and DiSimone.

Eugene F. Mastropieri, Glendale, for defendant D'Addario.

Robert Keshner, New York City, for defendant Bugliarelli.

Dublirer, Haydon & Straci, New York City, by Paul Victor, New York City, for defendant Gagliano.

Edward S. Panzer, New York City, for defendant Messina.

Herbert Siegal, New York City, for defendant Latella.

Michael P. Direnzo, New York City, for defendant Annatone.

Vincent J. Derosa, New York City, for defendant Faranda.

## OPINION

POLLACK, District Judge.

The defendants have moved to suppress the fruits of state and federal wiretaps obtained pursuant to eight state and three federal orders essentially on the grounds that the state tapes were not sealed "immediately" upon the termination of the taps and that the federal taps were derived from the state taps. The claim is also made that the affidavits submitted by an FBI agent as part of the government's application for the three federal taps were insufficient to authorize the use of wiretaps as an investigative technique and that other traditional means were sufficient and should have been employed.[1]

---

1. The motions of the defendants raised various objections to the wiretaps including failure to provide for post-interception notice, lack of minimization, improper sealing of the federal

At the conclusion of the hearing on suppression and following due deliberation, the Court denied the motions to suppress and announced that an opinion would follow. The Court's decision was made in this way to give the parties the benefit of the time intervening before the scheduled trial date to prepare for trial in the light of the decision reached.

The defendants herein are charged in a two count Indictment alleging that they wilfully and knowingly conducted an illegal gambling business in violation of Title 18, United States Code, Sections 1955 and 2. The instant prosecution is the culmination of an investigation of the alleged gambling combine. The investigation was initially conducted by the office of the District Attorney of Bronx County, New York, in conjunction with the New York City Police Department, and subsequently involved the Federal Bureau of Investigation. The state wiretap orders—not all of which intercepted people or places involved herein—were issued from September 1973 until July 1974. In about February 1974 the surveillance was compromised by an unauthorized leak to members of the combine that their phones were being tapped. In April 1974 the state authorities learned that the FBI was pursuing a parallel investigation and the efforts of the two agencies were combined. The District Attorney's office thereafter conducted the so-called Vaccarelli and Faranda state wiretaps.

Subsequently, the FBI made use of the results of the state intercepts to establish the "probable cause" necessary to obtain three authorizations for federal wiretaps from Judges Ward, Owen and Motley (the last tap was an extension of Judge Owen's) from July to October, 1974. The tapes resulting from these three taps are those which the government intends to introduce at trial; none of the state tapes will be utilized as evidence.

tapes and insufficiency of the wiretap orders. All objections were withdrawn, however, except for the two mentioned above, *i. e.,* untime-

**I**

At the threshold, the government contends that most of the defendants have no standing to challenge the use of the state tapes and the information derived therefrom in obtaining the federal wiretaps.

■ It is settled that only those whose conversations were intercepted or against whom the interception was directed, or on whose premises the conversations took place, may assert the unlawfulness of the interception. 18 U.S.C. § 2510(11); *Alderman v. United States,* 394 U.S. 165, 176, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969); *United States v. Wright,* 524 F.2d 1100, 1102 (2d Cir. 1975); *United States v. Bynum,* 513 F.2d 533, 534–35 (2d Cir.), *cert. denied,* 423 U.S. 952, 96 S.Ct. 357, 46 L.Ed.2d 277 (1975).

■ None of the state wiretaps was directed against any defendant herein who was not intercepted, and none of the intercepted conversations occurred on the premises of any defendant who was not himself intercepted. The defendants who were not intercepted thus have no standing to challenge the state taps directly. While these defendants may have been intercepted in the course of the federal taps, they may not contest the federal taps on grounds derived exclusively from alleged defects in the state taps as to which they are not "aggrieved persons." *United States v. Wright, supra.*

Applying these principles, the evidence shows that four of the state wiretaps did not involve the interception of any of the eleven defendants herein; two of the remainder were sealed promptly after only one or two days following their terminations and are not challenged on the ground of delayed sealing by any defendant. The remaining two state taps intercepted only three defendants, D'Addario, Dituri and Faranda in one (that issued by Justice Bernstein on January 24, 1974, the "G & D" tap), and one defendant, Dituri, in the other (issued by Justice Bloom on December 10, 1973, the "Social Club" tap). Thus, only

ly sealing of the state tapes and the insufficiency of the affidavits submitted in support of the federal wiretap applications.

these three defendants have standing to assert that the federal taps were tainted by the delay in sealing of the two previous state taps, and only one of those three may assert sealing defects in both state taps.

II

■ Section 2518(8)(a) of Title 18, U.S.C., proscribes the use at trial of intercepted conversations or "evidence derived therefrom" unless the tape bears a judicial seal or a "satisfactory explanation" is provided for its absence. This section has been held to be equally applicable where, although a seal is present, there has been a delay in the sealing process. *See United States v. Gigante,* 538 F.2d 502 (2d Cir. 1976); *United States v. Poeta,* 455 F.2d 117, 122 (2d Cir.), *cert. denied,* 406 U.S. 948, 92 S.Ct. 2041, 32 L.Ed.2d 337 (1972). The law of New York, which is applicable only to the extent it is more restrictive than federal law, *see United States v. Marion,* 535 F.2d 697 (2d Cir. 1976), appears to be the same. *See People v. Simmons,* 378 N.Y.S.2d 263, 266 (N.Y. Sup.Ct.1975).

■ Thus, suppression of the federal tapes is warranted on behalf of the defendants D'Addario, Dituri and Faranda only if (1) there is no satisfactory explanation for the delay in sealing of the two state taps, and (2) the federal tapes constitute "evidence derived" from state taps which they have standing to challenge.[2] As is explained below, neither of these factors is present in the instant case; accordingly, the federal tapes may not be suppressed on this ground.

**2.** The government contends that sealing defects in the state tapes—even the total absence of a seal—could not justify suppression of the federal tapes because 18 U.S.C. § 2518(8)(a) prohibits only the disclosure of unsealed tapes at trial, not the use of such tapes to establish probable cause for subsequent taps. The government contends that the latter use, which is all that is at issue in this case, is specifically authorized by §§ 2517(1), (2), which permit a law enforcement officer to make use of tapes to the extent "appropriate to the proper performance of his official duties."

This argument is unpersuasive, however, for it overlooks the plain language of § 2518(8)(a).

■ Having seen and heard the witnesses and considered the circumstances and the other evidence bearing on the issue, I decide and find that the delays in sealing the "Social Club" tapes were satisfactorily explained, did not derive from any purpose to obtain tactical advantages for the surveilling parties or the state prosecutors, and no investigative benefits were sought or obtained by the delays. There is no evidence whatsoever of tampering with the tapes from the date of the termination of the tap until the date of the seal. The delays encountered by the efforts of the Police to ready the tapes for sealing and to duplicate the Social Club tapes and the internal discussions in the District Attorney's office looking to continuance of the interception adequately explain and sufficiently justify, under the peculiar circumstances, the 24 day delay in sealing the Social Club tapes.

In respect to the G & D tapes, there was a tip-off to the targets of the tap, as the tape apparently confirms, resulting in a decision to terminate that tap before the date to which it had been authorized. The discovery of this misconduct brought on a flurry of excitement and confusion followed by the unexpected hospitalization of the Assistant District Attorney in charge and ultimately the re-assignment of the case to another assistant district attorney. In the course of picking up the threads, the latter discovered that the tapes so terminated had not been sealed and he immediately cured the defect.

That statute proscribes not merely the use at trial of an unsealed tape, but also the use at trial of any "evidence derived therefrom." Hence, if the federal tapes are so derived, § 2518(8)(a) mandates their suppression in the absence of a satisfactory explanation for the delay in sealing of the state tapes from which they were derived.

The provisions of §§ 2517(1), (2), relied upon by the government, presumably immunize law enforcement officers from criminal and civil liability under §§ 2511, 2520 for their intra-office use of tapes; they do not compel the admissibility at trial of evidence derived from intercepts procured in violation of the law.

■ While the duration of this sequence of events, 42 days, stretches the time periods of delay in sealing previously held to be satisfactorily explained, every case is *sui generis*. The sealing delay yielded no benefit to the surveilling authorities, was not sought for such a purpose, gave no one any tactical advantage and no tampering was either suspected or hinted or established in the premises by any party. I decide and find, having had the benefit of seeing and hearing the witness produced, evaluating his testimony on its own intrinsic merit and in the circumstances and on the basis of all the evidence bearing in any way on the issue, that a sufficient and satisfactory explanation had been established for the delay in sealing, and that it was not untimely.

■ As to the second factor listed above, it appears that the federal tapes do not constitute "evidence derived" from the state taps at issue here. While the application for the federal wiretap orders relied almost exclusively on information obtained from the prior state intercepts, the two intercepts which the defendant Dituri has standing to challenge, and the single intercept which the defendants D'Addario and Faranda may challenge, played a minor role in the applications.

■ Examination of the affidavits and information submitted in support of the federal wiretap orders shows that neither of the two state taps subject to challenge, either alone or in conjunction, was necessary to the establishment of probable cause on which such orders issued. Since the mere inclusion of illegally obtained evidence in an application for a wiretap authorization does not vitiate the order in such circumstances, *see United States v. Ceraso*, 355 F.Supp. 126, 129 (M.D.Pa.1973), the federal taps would not be affected by the delay in sealing of the two state taps even if there were no satisfactory explanation for the delay.

Although the opinion of the Supreme Court in *United States v. Giordano*, 416 U.S. 505, 533 n. 19, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974), casts some doubt on the validity of this "independent source" rule in some contexts, it appears appropriate to apply it on the facts of this case, *see* 416 U.S. at 559 n. 7, 94 S.Ct. 1820 (Justice Powell, dissenting in part).

### III

■ The defendants make a direct challenge to the federal wiretaps by asserting that one of the affidavits supporting the applications for the federal orders was insufficient to meet the requirements of 18 U.S.C. § 2518(1)(c). That provision requires that every application for a wiretap order include—

a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous.

The purpose of the § 2518(1)(c) statement is to assure that wiretapping is not routinely employed as a first resort in criminal investigations. *See United States v. Kahn*, 415 U.S. 143, 153 n. 12, 94 S.Ct. 977, 39 L.Ed.2d 225 (1974); *United States v. Giordano*, 416 U.S. 505 at 515, 94 S.Ct. 1820, 40 L.Ed.2d 341, *supra*. That purpose was clearly achieved in the investigation at issue here.

■ The affidavit adequately explained to the issuing judge why traditional investigative techniques alone would have been unlikely to succeed. As the affidavit indicated, the pursuit of gambling crime involves the absence or quick disappearance of records of gambling establishments, and the usually undecipherable or difficult-to-comprehend argot which is employed for concealment of the true nature of the activity. In this case the government was faced with an informer's apprehension and actual unwillingness to testify, and the fact that previous physical surveillance of the suspects had already been conducted. Additionally, the agent, experienced in such matters, pointed to the usual insulation of higher-ranking members of a gambling enterprise from day-to-day operations and the probable inadequacy of traditional techniques to discover their identities.

The judge was thus supplied with far more than mere conclusions of the affiant—

the shorthand factual statements of the affidavit contained a significance not lost on him. It would be unreasonable to blink at such proofs and to blind oneself to the realities of urban crime and the layering of its participants.

Strict compliance with the strictures imposed by Title III is of course essential. *United States v. Marion, supra.* However, compliance is not to be defined in unrealistic terms or without regard to the attributes of the specific crime under investigation. Section 2518(1)(c) does not impose impossibly burdensome standards; indeed, the investigation of a criminal enterprise widely understood to be largely and routinely conducted over the telephone may reasonably require electronic surveillance in conjunction with more traditional techniques. *See United States v. Steinberg,* 525 F.2d 1126, 1130 (2d Cir. 1975).

To the extent that *United States v. Kalustian,* 529 F.2d 585 (9th Cir. 1975), relied upon by defendants, suggests that the affidavit in this case is insufficient, it does not reflect the law of either this circuit, *see United States v. Steinberg, supra,* or others, *see, e. g., United States v. Armocida,* 515 F.2d 29, 38 (3d Cir. 1975), *cert. denied,* 423 U.S. 858, 96 S.Ct. 111, 46 L.Ed.2d 84; *United States v. Schaefer,* 510 F.2d 1307, 1310 (8th Cir.), *cert. denied,* 421 U.S. 978, 95 S.Ct. 1980, 44 L.Ed.2d 470 (1975); *United States v. Robertson,* 504 F.2d 289, 293 (5th Cir. 1974), *cert. denied,* 421 U.S. 913, 95 S.Ct. 1568, 43 L.Ed.2d 778 (1975); *United States v. Bobo,* 477 F.2d 974, 983 (4th Cir. 1973), *cert. denied,* 421 U.S. 909, 95 S.Ct. 1557, 43 L.Ed.2d 773 (1975); *United States v. Fina,* 405 F.Supp. 267, 272–73 (E.D.Pa.1975) (explicitly rejecting *Kalustian* ).

The defendants place special emphasis on the fact that the government procured a search warrant a few weeks after the extension of the second federal wiretap. This circumstance does not affect the result reached here, however. While the affidavit supporting the wiretap order questioned the efficacy of such a search, it neither indicated that a search would be entirely without value nor stated that it would not be performed. Moreover, the affidavit supporting the search warrant did not suggest that such a search, by itself, could or would produce all the evidence necessary to prove all the elements of the offense against the suspects. Thus, the existence of the subsequent search in no way indicates that traditional investigative techniques would have been adequate to the task at hand.

Although this analysis suggests that the alleged inconsistency between the two supporting affidavits is more superficial than real, there is little doubt that greater candor in the government's affidavits was in order; there would have been little jeopardy to the government's position had its affidavit supporting the wiretap application admitted that a search would likely prove fruitful to some degree, though only in conjunction with—and presumably after the completion of—electronic surveillance.

In sum, the motions for suppression of the three federal wiretaps which the government intends to use as evidence at trial are denied.

So Ordered.